*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee/Cross-Appellant

**v.**

### Christopher S. COOLEY, Fireman Apprentice (FA)
United States Coast Guard, Appellant/Cross-Appellee

**Nos. 15-0384 & 15-0387**
Crim. App. No. 1389

Argued October 6, 2015—Decided May 6, 2016

Military Judges: Christine N. Cutter, Lewis T. Booker, Daniel J. Daugherty, and Michael E. Tousley

For Appellant/Cross-Appellee: *Lieutenant Philip A. Jones* (argued); *Commander Matthew J. Fay* (on brief).

For Appellee/Cross-Appellant: *Stephen P. McCleary*, Esq. (argued); *Lieutenant Commander Amanda M. Lee* and *Lieutenant Daniel Velez* (on brief); *Lieutenant Lars T. Okmark.*

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN and Judges STUCKY, OHLSON, and DIAZ joined.

————————

Judge RYAN delivered the opinion of the Court.[1]

The evolution of this case unfolds like a messy primer on military justice procedure. One group of charges and specifications (the "First Charges") was referred and then dismissed without prejudice for a violation of the time period set forth in Rule for Court-Martial (R.C.M.) 707 ("*Cooley I*").[2]

---

[1] Judge Albert Diaz, of the United States Court of Appeals for the Fourth Circuit, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

[2] The "First Charges" included one specification of attempt to commit a lewd act upon a child, two specifications of violating a lawful order, two specifications of solicitation of sexually explicit videos from a minor, and one specification of possessing "one or more sexually suggestive visual depictions of what appears to be a

The First Charges, in essentially the same format, were then re-referred and dismissed by the convening authority ("*Cooley II*").[3] The First Charges, along with four additional specifications (the "New Charges"), were referred together to a new court-martial ("*Cooley III*"). One of the new specifications, Specification 3 of Charge II alleging a violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2012), was dismissed by the convening authority prior to trial.[4] Thus, the United States Coast Guard Court of Criminal Appeals (CGCCA) had no jurisdiction to consider it and erred in reviewing it. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012); Article 67(c), UCMJ, 10 U.S.C. § 867(c) (2012); *Center for Constitutional Rights v. United States*, 72 M.J. 126, 128 (C.A.A.F. 2013) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 533–34 (1999)). Two additional specifications ("Additional Charge") of attempted inducement of a minor for the purpose of producing a sexually explicit picture transmitted through interstate commerce in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012), were also added but later dismissed by the military judge, and these specifications are also not before us. The remaining new charge, Specification 2 of Charge IV — the only one of the New Charges at issue in this opinion — was not, in fact, "new" at all, but rather based entirely on information the Government had when it referred charges in *Cooley I*. Throughout this time,

---

minor," in violation of Articles 80, 92, 120, 134, UCMJ. However, as relevant for our purposes, the First Charges referenced throughout our opinion do not include one specification of violating a lawful order and one specification of possessing "one or more sexually suggestive visual depictions of what appears to be a minor" because they were dismissed and withdrawn pursuant to a pretrial agreement.

[3] The propriety of these actions is not before us.

[4] Specification 1 of Charge II, violation of a lawful order, and Specification 1 of Charge IV, possession of sexually suggestive images of apparent minors, were not before the CCA.

Appellant[5] sat in pretrial confinement for a total of 289 continuous days despite five formal speedy trial demands.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his conditional pleas (he preserved his right to appeal claimed violations of R.C.M. 707 and Article 10, UCMJ), of one specification of attempting a lewd act with a child of more than twelve years but less than sixteen years, two specifications of attempting to wrongfully commit indecent conduct, one specification of failing to obey an order, and one specification of wrongfully and knowingly possessing child pornography, in violation of Articles 80, 92, and 134, UCMJ, 10 U.S.C. §§ 880, 892, 934 (2012), respectively. Appellant was sentenced to seven years of confinement, forfeiture of all pay and allowances, reduction to the pay grade of E–1, and a bad-conduct discharge. Pursuant to a pretrial agreement (PTA), the convening authority approved the sentence and suspended all confinement in excess of fifty months.

On review, the CGCCA dismissed all charges and specifications against Appellant. *United States v. Cooley*, No. 1389, 2014 CCA LEXIS 936, at *26–27 (C.G. Ct. Crim. App. Dec. 24, 2014) (unpublished). The CGCCA dismissed with prejudice the First Charges for violating Article 10, UCMJ, 10 U.S.C. § 810 (2012), and purported to dismiss both new charges without prejudice for violating the time limitations established by R.C.M. 707. 2014 CCA LEXIS 936, at *16–18, *26–27. The following issues are before the Court:

### CERTIFIED ISSUES

Whether the Coast Guard Court of Criminal Appeals erred by finding that pre-trial confinement can serve as *per se* prejudice for purposes of determining a violation of Article 10, Uniform Code of Military Justice.

Whether the facts and circumstances of Appellee's case, considering the factors set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) and applied to review of Article 10 by

---

[5] In accordance with this Court's rules and practice for hearings when both parties seek review in this Court, "the accused shall be deemed the appellant." C.A.A.F. R. 40(b)(2).

*United States v. Birge*, 52 M.J. 209, 212 (C.A.A.F. 1999), amount to a violation of Article 10, Uniform Code of Military Justice.

**GRANTED ISSUE**

Whether the Government violated Appellant's rights under Article 10, UCMJ, when the Government possessed key evidence against Appellant on July 20, 2012, and February 5, 2013, yet made no move to prosecute Appellant for these offenses until June of 2013, despite his pretrial confinement from December 20, 2012.

We hold as follows. First, the CGCCA was incorrect when it concluded that pretrial confinement is per se prejudicial for purposes of determining whether there is an Article 10, UCMJ, violation, and we answer that certified question in the affirmative. Second, the record does not support the military judge's findings of fact and conclusion that the Government met its burden to show due diligence during the time period between the dismissal of *Cooley I* and trial in *Cooley III*. Having carefully reviewed the record and weighed the other factors from *Barker v. Wingo*, 407 U.S. 514 (1972), we also answer the second certified question in the affirmative. Finally, with respect to the Granted Issue, we note that the Government did not certify the CGCCA's dismissal of the child pornography specification without prejudice after applying the "substantial information" rule to R.C.M. 707, *but see United States v. Wilder*, 75 M.J. 135 (C.A.A.F. 2016), and that ruling by the CGCCA remains the law of the case. *United States v. Parker*, 62 M.J. 459, 464 (C.A.A.F. 2006). However, Appellant was not confined for that charge, and we decline his invitation to extend Article 10, UCMJ, to an offense for which he was not confined, *cf. United States v. Nash*, 5 M.J. 37, 38 (C.M.A. 1978); *United States v. Mladjen*, 19 C.M.A. 159, 161, 41 C.M.R. 159, 161 (1969). Accordingly, we answer the Granted Issue in the negative.

However, the fact the Government had substantial information about the New Charge as of March 1, 2013, but declined to refer it until *Cooley III* after the First Charges were dismissed for violating Appellant's speedy trial rights

under R.C.M. 707 is not irrelevant for purposes of determining whether there was a violation of Article 10, UCMJ, as to the charges for which Appellant was actually confined. The Government's belated decision to prefer a charge it could have brought months earlier, occasioning an additional 135 days of delay, weighs heavily against the Government in considering whether it proceeded with reasonable diligence for purposes of Article 10, UCMJ. While a dismissal under R.C.M. 707 resets the speedy trial clock for its purposes, *see* R.C.M. 707(b)(3)(A), such dismissal is neither carte blanche for the Government to overlook its obligation to proceed with reasonable diligence under Article 10, UCMJ, nor an invitation to take a second bite at perfecting a case and cause further delay based on information previously known to the Government. The decision of the CGCCA is affirmed in part and reversed in part.

## I. BACKGROUND

### A. INITIAL INVESTIGATION

On July 20, 2012, Appellant, who was stationed in Juneau, Alaska, confessed to Special Agent (SA) James Renkes of the Coast Guard Investigative Service (CGIS) that over the course of several years, he had sought out sexually explicit photographs and videos of minors, solicited and received sexually explicit photographs from several minors over the internet, had sexual encounters with minors, and that he continued to have urges to view sexually explicit pictures and videos of minor boys. Some minors were identified by first name only, and they resided in a variety of states and with no identified address. Appellant told SA Renkes that he had deleted all associated images and emails as well as his online chat names. Appellant was ordered into pretrial confinement that day, and over thirty of his electronic devices were seized. On July 27, 2012, Appellant was released from pretrial confinement and immediately placed under pretrial restriction. In August 2012, Appellant's restriction was lifted except for certain conditions, including an order to refrain from all contact with minors. On September 7, 2012, Appellant's electronic devices were sent to the CGIS Electronics Crime Section (CGIS ECS), and on October 1, 2012, the Government

received a preliminary analysis indicating Appellant's iPhone contained "contraband" in the form of depictions of child nudity. Additionally, data was sent to the National Center for Missing and Exploited Children Law Enforcement Services on November 14, 2012, but a January 2013 CGIS ECS report indicated that none of Appellant's images matched images in that database.

On December 20, 2012, Appellant was again placed into pretrial confinement at the Naval Consolidated Brig, Miramar. Although the immediate reason provided was that Appellant had contacted a minor, the confinement order cited probable cause to believe that Appellant had violated not only Article 92, UCMJ, by failing to obey the no-contact order, but also violated Article 120, UCMJ, for indecent liberties with a child and indecent acts with a child. Appellant made speedy trial demands on three occasions around this time: November 12, 2012; December 5, 2012; and January 25, 2013.

The First Charges were preferred against Appellant on February 19, 2013. An Article 32, UCMJ, 10 U.S.C. § 832 (2012), investigation was held on March 5, 2013 at Brig, Miramar. In the Article 32, UCMJ, report, the investigating officer found that based on Appellant's confession and SA Renkes' testimony and identification of selected images from Appellant's iPhone from the January 2013 CGIS ECS report,[6] there were also reasonable grounds to support referral of a specification of possessing apparent child pornography in violation of Article 134, UCMJ. After reviewing the first report, SA Renkes requested that CGIS ECS perform a secondary analysis in order to confirm the presence of child pornography with respect to two image files.[7] The secondary analysis was contained in a March 1, 2013, CGIS ECS report, which determined that these images contained possible child pornography. Although a

---

[6] The January 2013 ECS report led to the discovery of over 300 images — 205 of which depicted what appeared to be persons under the age of eighteen in various stages of undress.

[7] SA Renkes testified that the analysis on the additional two requested images was initially completed in January but a second confirmatory analysis was warranted.

CGIS Memorandum of Activity (MOA), also dated March 1, 2013, indicated that (1) analysis of all media and images seized from Appellant was "completed," (2) that two images were suspected child pornography, and (3) that images submitted to the National Center for Missing and Exploited Children Law Enforcement Services Portal resulted in no matches, the report was not submitted at the Article 32, UCMJ, investigation. On March 18, 2013, the convening authority referred charges to a general court-martial, *Cooley I*, but did not add a specification of possessing actual child pornography. In March 2013, the military judge ordered the parties to prepare a trial schedule. At that time, the Government agreed with the defense on an April 3, 2013, arraignment date and on trial dates convenient for the defense. While a date was not set for the *Cooley I* trial, it was understood that trial on the First Charges was ready to commence, as evidenced by the defense's requested trial dates of June 5 through June 7, and reference to the possible trial date of July 23, 2013. *Cooley*, 2014 CCA LEXIS 936, at *13. Furthermore, in its brief before this Court, the Government conceded that it "was in a position after the [April 3, 2013,] arraignment to bring the accused to trial a short time later."

Formal service of the First Charges occurred on April 3, 2013. On that same day, Appellant was formally arraigned despite his Article 35, UCMJ, objection.[8] On April 17, 2013, Appellant requested expert assistance to help the defense investigate and explain psychological issues bearing on Appellant's rehabilitative potential, and the military judge ordered appointment of such an expert on May 16, 2013, noting that Appellant conceded that an expert from the Armed Forces Center for Child Protection ("AFCCP") would serve his needs.

Appellant filed a motion to dismiss *Cooley I* for violations of his right to a speedy trial under both R.C.M. 707 and Article 10, UCMJ. On May 23, 2013, a newly detailed Naval

---

[8] Article 35, UCMJ, 10 U.S.C. § 835 (2012), provides an accused in a general court-martial case a right to a five-day delay between the service of charges and any Article 39(a), UCMJ, session or trial proceeding.

military judge held that the April 3, 2013, arraignment was a legal nullity because it was held over Appellant's objection. Furthermore, because Appellant had been continuously confined for 144 days and the delay exceeded the 120 days permitted by R.C.M. 707, the military judge dismissed the First Charges without prejudice. The Government immediately re-preferred the same charges (*Cooley II*) on May 23, 2013, which the convening authority dismissed without prejudice on June 14, 2013. On June 6, 2013, the defense filed their fourth formal request for a speedy trial.

On June 14, 2013,[9] as relevant to our analysis, the Government re-preferred the First Charges along with the New Charges, which included a breach of a no-contact order in violation of Article 92, UCMJ, and possession of child pornography in violation of Article 134, UCMJ. The only one of the New Charges relevant for our purposes, the child pornography charge, consisted of three images, including the two image files confirmed in the March CGIS ECS Report, and one image file that SA Renkes had confirmed some time after the March CGIS ECS report. By then, Appellant had been continuously confined for 177 days. Appellant renewed his request for expert assistance on July 9, 2013, but the Government denied that request, forcing Appellant to relitigate an issue that had previously been resolved in his favor during *Cooley I*.

A second Article 32, UCMJ, investigation commenced on July 22, 2013, at Brig, Miramar. As relevant to the issues before this Court, this limited investigation concerned the new specification of child pornography contained in the New Charges, not the First Charges. While the Government asserts that the additional specification of child pornography was based on an ongoing analysis of hundreds of images from Appellant's electronic devices, the record contains no investigative reports, memorandum of activity, or additional

---

[9] The third military judge incorrectly found that June 17 was the date of re-preferral of the First Charges with the additional specifications; the charge sheet indicates that it was June 14.

analysis of the electronic devices after the March 1, 2013, CGIS MOA.[10]

The First Charges (or charges nearly identical to them) and the New Charges were referred to trial by general court-martial, *Cooley III*, on August 7, 2013.[11] During this time, Appellant again filed a formal request for speedy trial, his fifth and final, on August 19, 2013. A pretrial order set an arraignment date of August 26, a motions due date of August 22, and a trial date of August 26, 2013, in either San Diego, California, or Juneau, Alaska. The Government later requested continuances of both the arraignment and trial dates, due primarily to logistical issues. The military judge granted the Government's requests, and Appellant was not arraigned until September 10, 2013.

On September 11, 2013, in response to Appellant's renewed motion for the appointment of an expert, the military judge ordered the Government to provide the expert assistance from the AFCCP. The military judge concluded that the necessity of an expert was apparent in "the need for psychiatric or psychological assistance to investigate, and if necessary, explain to the fact-finder issues that might properly bear on the accused's rehabilitative potential. This would include the accused's psychosocial background and current diagnosis." The Government delayed providing an expert until September 20, 2013, fourteen days before trial. Moreover, the expert it provided was not from AFCCP, and by the expert's own admission, his normal practice did "not

---

[10] The record alludes to an additional review by SA Renkes after receipt of the March CGIS ECS Report, in which SA Renkes confirmed a third image of child pornography that served as a basis for the New Charge. However, there is no indication that this image was not in the two previous CGIS ECS reports, and no relevant facts or timeline is given for the review. *See Cooley*, 2014 CCA LEXIS 936, at *24 ("The only date for which we have evidence is March: after the special agent received the report on 5 March, he conducted further investigation. Such investigation could have been completed later in March, for all the evidence shows, giving the Government substantial information on which to base preferral of the specification before the end of March.").

[11] The two specifications under the Additional Charge were referred at this time.

include sex offender treatment." The expert was unable to meet with Appellant until September 30, four days before trial, and was unable to administer at least six sexual offender-related tests because he did not have the time to do them. The expert was not called at trial.

Trial in *Cooley III* commenced on October 4, 2013, 289 days after Appellant was reconfined in December 2012, and 135 days after the first court-martial, *Cooley I*, was dismissed for violations of R.C.M. 707.

### B. MILITARY JUDGE'S FINDINGS

Prior to trial, Appellant moved at several points to dismiss all charges and specifications due to violations of Article 10, UCMJ, and R.C.M. 707. At the court-martial level, speedy trial issues were litigated and ruled on at least three times. As previously noted, on May 23, 2013, a newly detailed Naval military judge found the delay between Appellant's last entry into pretrial confinement and a valid arraignment violated R.C.M. 707 and dismissed the First Charges without prejudice. On September 20, 2013, the third and final detailed military judge granted the defense's motion to dismiss the two specifications under the Additional Charge for violation of R.C.M. 707 but denied the defense's motion to dismiss with respect to the New Charges.

On September 26, 2013, the military judge made extensive findings of fact and denied Appellant's Article 10, UCMJ, motion. First, the military judge found that the length of the delay was not unreasonable given the nature and complexity of the case, Appellant's misconduct during pretrial restriction, and the Coast Guard trial docket. The military judge found that the Government made a "good faith attempt" to join all known offenses into a single proceeding by taking 110 days to re-prefer charges against Appellant and that there was no evidence of an intentional delay to seek an advantage. Second, the military judge accepted the reasons the Government asserted for its delay, including the demands and complexity of the investigation, the nature of the case, the complexity of the issues, the geographic distances involved, the electronic media analysis involved, and the Coast Guard judiciary's trial docket and availability. The military judge also found that the

additional specification of child pornography was based on information from an ongoing investigation. Furthermore, the military judge found that, at the time of the ruling, investigators were continuing to try to identify potential child-victims through iPhone and data analysis. With respect to the need for confinement, the military judge concluded that lesser forms of restraint were inadequate, that the second period of pretrial confinement was the direct result of Appellant's own misconduct, and that the conditions of confinement were not particularly oppressive. Finally, the military judge found that Appellant was not prejudiced in the preparation of his defense because a qualified expert consultant was appointed before trial commenced.

### C. CGCCA DECISION

On appeal, the CGCCA found that the military judge's speedy trial findings of fact were supported by the evidence, but it did not affirm the military judge's ultimate conclusions. *Cooley*, 2014 CCA LEXIS 936, at *8–9. The CGCCA considered the charges and specifications referred against Appellant on August 7, 2013, in two distinct groups.[12] Those in the first group were virtually identical to the First Charges referred on March 18, 2013, and dismissed without prejudice on May 23, 2013, for a violation of R.C.M. 707.[13] 2014 CCA LEXIS 936, at *5, *17–18. Those in the second group of specifications were the remaining New Charges referred for the first time on August 7, 2013. 2014 CCA LEXIS 936, at *5, *17–18.

The CGCCA held, pursuant to Article 10, UCMJ, that when an accused is in pretrial confinement and additional charges are preferred unrelated to his or her confinement, "the Government's accountability for the additional charges ... 'should commence when the Government had in its possession substantial information on which to base the

---

[12] The correctness of the convening authority's dismissal without prejudice or propriety of referring the dismissed charges and specifications to a second court-martial is not before us.

[13] The CGCCA did not consider the charges and three specifications in this group that were dismissed without prejudice at trial on October 4, 2013.

preference.'" 2014 CCA LEXIS 936, at *19 (quoting *United States v. Johnson*, 1 M.J. 101, 103 (C.M.A. 1975)).

As to the First Charges, the CGCCA held that the military judge erred in denying Appellant's motion to dismiss for violation of Article 10, UCMJ, concluding that the Government's "decision to pause .... [W]as not merely a short period of inactivity, it was an intentional diversion to new activity that was in no way required for the case to go forward, displaying a disregard for the speedy trial rights of the confined Appellant." 2014 CCA LEXIS 936, at *17. Balancing Article 10, UCMJ, concerns, the CGCCA held that "each day of confinement before trial is clear prejudice" and saw "no need to address [Appellant's] specific items of alleged prejudice" because "the prejudice of confinement itself weighs significantly against the Government." 2014 CCA LEXIS 936, at *16. The CGCCA dismissed the First Charges with prejudice. 2014 CCA LEXIS 936, at *17, *26–27.

As to the New Charge of possession of actual child pornography that remains before this Court, the CGCCA held that the military judge erred in determining the starting point of Government accountability for speedy trial clock purposes. 2014 CCA LEXIS 936, at *20–21. The CGCCA found that the Government possessed substantial information regarding possession of child pornography on which to base preferral of the specification before the end of March 2013. 2014 CCA LEXIS 936, at *24–25. Therefore, under R.C.M. 707(d)(1), the CGCCA concluded that the September 10 arraignment was well beyond the 120 days prescribed by R.C.M. 707 and dismissed the New Charge without prejudice. 2014 CCA LEXIS 936, at *24–25. The CGCCA further noted that the military judge did not err in conducting an Article 10, UCMJ, analysis for the New Charges because that charge was the cause for the delay in this case but was not itself delayed for Article 10, UCMJ, purposes. 2014 CCA LEXIS 936, at *25–26.

## II. DISCUSSION

This case illustrates the tension between the admonition to join all known offenses at a single trial, the ability of the Government to obtain a dismissal without prejudice under R.C.M. 707, and an accused's right to a speedy trial under

Article 10, UCMJ. Mindful of the preference for joinder, *see* R.C.M. 601(e)(2) Discussion, and cognizant of the fact that complex cases may require investigations that run past the 120-day benchmark in R.C.M. 707 such that dismissal without prejudice is warranted, *cf. United States v. Cossio*, 64 M.J. 254, 257 (C.A.A.F. 2007), we are convinced that this case is the outlier that warrants the interposition of Article 10, UCMJ, to fill the interstice in speedy trial rights left open by R.C.M. 707. It is simply not the case that where an accused is in pretrial confinement, the Government, having had charges dismissed without prejudice for violating R.C.M. 707, may take that as an invitation to start its charging decisions afresh based on information it had access to before the initial charges were referred and dismissed.

## A. GRANTED ISSUE

The CGCCA dismissed the child pornography specification of the New Charge without prejudice under R.C.M. 707 because it deemed the trigger for speedy trial purposes for that charge was the date on which the Government possessed substantial information. *Cooley*, 2014 CCA LEXIS 936, at *24–25. This holding is clearly at odds with our recent decision in *Wilder*, 75 M.J. at 138 ("[W]e do not hesitate to conclude that when analyzing a speedy trial violation under R.C.M. 707, it is the earliest of the actions listed in R.C.M. 707(a) with respect to a particular charge that starts the speedy trial clock for that charge."), but that case was decided after the CGCCA's decision. The Government did not certify the CGCCA's decision on that point, and the question whether the CCA erred in its R.C.M. 707 analysis is not before us. *See Parker*, 62 M.J. at 464. Moreover, we are mindful of the fact that an accused should not be prejudiced by the appellate review process. *See, e.g.*, *United States v. Smith*, 39 M.J. 448, 451 (C.M.A. 1994); *United States v. Dean*, 7 C.M.A. 721, 724–25, 23 C.M.R. 185, 188–89 (1957).

Appellant, however, asks that we go further and dismiss the child pornography specification with prejudice for violating Article 10, UCMJ, based on the "substantial information" rule set forth in *Johnson*, 1 M.J. at 103 (quoting *United States v. Johnson*, 23 C.M.A. 91, 93, 48 C.M.R. 599, 601 (1974)). We decline to do so and take this

opportunity to clarify that Article 10, UCMJ, applies only to those charges for which an accused is arrested or confined. In other words, Article 10, UCMJ, protection applies only to charges related to actual confinement, and an accused's speedy trial rights for all unrelated charges are still enforced under R.C.M. 707 and the Sixth Amendment.

We review questions of statutory interpretation de novo. *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014). Article 10, UCMJ, provides:

> When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

By its own terms, Article 10, UCMJ, applies to arrest or confinement and requires that a person be tried or informed of the offenses for which he or she is confined. *See United States v. Schuber*, 70 M.J. 181, 187 (C.A.A.F. 2011); *United States v. Cooper*, 58 M.J. 54, 60 (C.A.A.F. 2003). For Article 10, UCMJ, to apply, confinement must be related to specific charges. *Mladjen*, 19 C.M.A. at 161, 41 C.M.R. at 161 (holding that an accused's confinement date on the original charges "marked the beginning of the period for which the Government was accountable ... as to those charges" but the other, unrelated, charges still under investigation were not a part of such accountability because "a period of investigation is normally not part of the period for which the Government is accountable in determining the timeliness of prosecution, unless the suspect or accused *is confined or restrained in connection with those charges*" (emphasis added)); *see also Nash*, 5 M.J. at 38 (holding that because an appellant's "reconfinement was unrelated to the charges tried by the court-martial, the Court of Military Review properly concluded the period of confinement for the initial charges did not include the entire period of confinement"). Based on this case law and its plain text, Article 10, UCMJ, does not apply to offenses for which an accused was neither arrested nor confined.

With respect to how to define "in connection with confinement" for Article 10, UCMJ, purposes, military

judges should look to the confinement order and related documents. In this case, based on those references, Appellant was not arrested or placed into pretrial confinement for possession of actual child pornography.

Appellant nonetheless relies on the "substantial information" rule based on *Johnson*, 1 M.J. at 103 (quoting *Johnson*, 23 C.M.A. at 93, 48 C.M.R. at 601). It is true that prior to the promulgation of R.C.M. 707 in 1984, this Court held that, in the context of multiple charges arising during an accused's confinement, government accountability for the speedy trial clock began to run "when the Government had in its possession substantial information on which to base the preference of charges." *Johnson*, 23 C.M.A. at 93, 48 C.M.R. at 601. The President then promulgated R.C.M. 707, which provided specific time limitations and other procedural rules relating to the right to a speedy trial. *See Wilder*, 75 M.J. at 138–39. Since then, this Court has neither cited *Johnson* nor applied the "substantial information" rule, and this Court has also overruled many of the precedents pertaining to Article 10, UCMJ, finding R.C.M. 707 to be more relevant. *See United States v. Kossman*, 38 M.J. 258, 260–61 (C.M.A. 1993) (overruling the ninety-day presumption from *United States v. Burton*, 21 C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971), in favor of a "reasonable diligence standard" as a result of the President's promulgation of R.C.M. 707); *see also United States v. Robinson*, 28 M.J. 481, 482–83 (C.M.A. 1989) (finding no error in the CCA's application of R.C.M. 707 standards to the start of a speedy trial clock instead of prior Article 10, UCMJ, case law); *United States v. McCallister*, 27 M.J. 138, 140–41 (C.M.A. 1988) ("This Court's experience since the promulgation of R.C.M. 707 satisfies us that any purpose sought to be served originally by the 'demand prong' of *Burton* now is fully met by the three sets of protection just mentioned.").

Here, the judge-made "substantial information" rule, like much of the pre-R.C.M. 707 case law, yields to an actual rule promulgated by the President, whose purpose is to provide clear guidelines. *See Manual for Courts-Martial, United States,* Analysis of the Rules for Courts-Martial app. 21 at A21–42 to A21-43 (2012 ed.); *see also Kossman*, 38 M.J. at 261 n.3 (stating R.C.M. 707 is not the "'know-all, be-all' of

speedy-trial issues; but [R.C.M.] 707 does provide good guidance to both the Bench and Bar"). Under R.C.M. 707, the clear speedy trial trigger for offenses for which an accused is not confined is the date of preferral, and the clear trigger for offenses for which an accused is confined is the date of confinement, although the latter is also subject to the greater protection of Article 10, UCMJ. *See Wilder*, 75 M.J. 135.

We therefore overrule the "substantial information" rule. Because Appellant was not confined for the possession of actual child pornography charge, Article 10, UCMJ, did not apply to that charge, and the CGCCA did not err in concluding that there was no Article 10, UCMJ, violation with respect to that offense.

### B. CERTIFIED ISSUES

While R.C.M. 707 provides clear guidance in most cases, we have never held that it voids the additional protections of Article 10, UCMJ, when an accused is in pretrial confinement. As we recently reiterated:

> These speedy trial protections and inquiries, though overlapping in some respects, are distinct. "The fact that a prosecution meets the 120-day rule of R.C.M. 707 does not directly 'or indirectly' demonstrate that the Government moved to trial with reasonable diligence as required by Article 10."

*Wilder*, 75 M.J. at 138 (quoting *Mizgala*, 61 M.J. at 128).

"This court reviews de novo the question of whether [the accused] was denied his right to a speedy trial under Article 10, UCMJ, as a matter of law[,] and we are similarly bound by the facts as found by the military judge unless those facts are clearly erroneous." *Cossio*, 64 M.J. at 256 (citing *Mizgala*, 61 M.J. at 127); *see also Kossman*, 38 M.J. at 261–62. When speedy trial allegations involve several specifications, each specification must be considered separately. *United States v. Talavera*, 8 M.J. 14, 17 (C.M.A. 1979); *see also Robinson*, 28 M.J. at 482–83. In this case, we assess whether Appellant received a speedy trial under Article 10, UCMJ, on the offenses for which he was confined,

the First Charges. Based on the record before us, we hold that he did not.

### i. Analysis

Article 10, UCMJ, is a "fundamental, substantial, personal right," *Mizgala,* 61 M.J. at 126, and is a statutory protection intended to prevent soldiers from being "put in the clink and held there for weeks, sometimes months, before [being] brought to trial." *Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services,* 81st Cong. 906 (1949) (statement of Mr. Anderson, Member, Subcomm. of the Comm. on Armed Services), *reprinted in Index and Legislative History, Uniform Code of Military Justice* (1950) (not separately paginated). Moreover, the right to a speedy trial under Article 10, UCMJ, is designed to "[ensure] that the accused knows the reason for the restraint of his liberty, and to protect him, while under restraint, from unreasonable or oppressive delay in disposing of a charge of alleged wrongdoing, either by trial or by dismissal." *United States v. Tibbs*, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965); *see also Schuber*, 70 M.J. at 187 (citing *Mizgala*, 61 M.J. at 124). Article 10, UCMJ, does not demand constant motion but does impose on the Government the standard of "reasonable diligence in bringing the charges to trial." *Mizgala*, 61 M.J. at 127, 129 (internal quotation marks omitted) (citations omitted).

In determining reasonable diligence for the purposes of Article 10, UCMJ, courts must conduct a four-factor analysis articulated in *Barker*, 407 U.S. 514, and adopted by this Court in *United States v. Birge*, 52 M.J. 209, 211–12 (C.A.A.F. 1999). The four factors assess: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant. *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (citing *Barker*, 407 U.S. at 530). None of the four *Barker* factors alone are a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533.

In our examination of reasonable diligence, "[w]e remain mindful that we are looking at the proceeding as a whole and not mere speed," and we give substantial deference to

17

the military judge's findings of fact unless they are clearly erroneous. *Mizgala*, 61 M.J. at 127–29. However, it is the Government's burden to show due diligence, *id.* at 125, and it is the Government's responsibility to provide evidence showing the actions necessitated and executed in a particular case justified delay when an accused was in pretrial confinement. *See id.*; *cf. United States v. Seltzer*, 595 F.3d 1170, 1178 (10th Cir. 2010); *United States v. Brown*, 169 F.3d 344, 349–50 (6th Cir. 1999). This is even more necessary where, as here, the Government is operating under the aegis of both an R.C.M. 707 dismissal and multiple demands for speedy trial made by the accused.

### a. The length of delay

The initial question is whether 289 days of pretrial confinement before trial on the First Charges was unreasonable. To determine how the first factor affects our Article 10, UCMJ, inquiry, we consider the particular circumstances of the case because "the delay that can be tolerated for an ordinary street crime is considerably less than [that] for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. The first factor, the length of the delay, is "a triggering mechanism" and can be dispositive. *Cossio*, 64 M.J. at 257 (internal quotation marks omitted) (citation omitted); *see also Schuber*, 70 M.J. at 188. This analysis "is not meant to be a *Barker* analysis within a *Barker* analysis" but should include the seriousness of the offense, the complexity of the case, the availability of proof, and "additional circumstances includ[ing] whether Appellant was informed of the accusations against him, whether the [g]overnment complied with procedures relating to pretrial confinement, and whether the Government was responsive to requests for reconsideration of pretrial confinement." *Schuber*, 70 M.J. at 188 (citing *Barker,* 407 U.S. at 530–31, 531 n.31).

On the facts before us, the length of the delay is unreasonable. Even though we accept that the First Charges involved a complex investigation, no additional investigative action is reflected in the record after March 2013. The charges in *Cooley I* that were dismissed without prejudice for violating the speedy trial rule in R.C.M. 707 in May 2013 were virtually identical to the charges finally brought to

trial in October 2013 in *Cooley III*, and all information related to the New Charge of possessing child pornography appears to have been in the Government's possession by March 2013. Moreover, despite Appellant's multiple speedy trial demands, the Government did not respond to these requests in an adequate fashion. On these facts, the delay of 289 days is unreasonable and a sufficient trigger for a full Article 10, UCMJ, analysis. *See Wilson*, 72 M.J. at 352. This factor weighs heavily in favor of Appellant.

### b. The reasons for delay

The Government argues that it acted with reasonable diligence after the dismissal of the First Charges on May 23, 2013, because it continued to investigate and faced significant challenges given the complexity of the investigation. The Government also contends that the lack of any evidence of intent to purposefully delay the proceedings against Appellant demonstrates that its actions were reasonable. The record does not support the claimed complexity of the investigation after May 2013, and the delay from May to October appears attributable to the Government's belated decision to add a charge that the Government elected not to pursue in March 2013.

Under the reasons for delay prong of the *Barker* framework, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. First, a deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government. *Id.* "[M]ore neutral reason[s] such as negligence or overcrowded courts" also weigh against the Government, though "less heavily." *Id.* "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* In addition, "the Government has the right (if not the obligation) to thoroughly investigate a case before proceeding to trial." *Cossio*, 64 M.J. at 258. In contrast, "delay caused by the defense weighs against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

Under Article 10, UCMJ, outside of an explicit delay caused by the defense, the Government bears the burden to demonstrate and explain reasonable diligence in moving its case forward in response to a motion to dismiss. *See Mizgala*, 61 M.J. at 125. This explanation must be "a

particularized showing of why the circumstances require the [delay]." *See Seltzer*, 595 F.3d at 1178. Unexplained periods of delay will weigh against the Government, *Wilson*, 72 M.J. at 355, but "[b]rief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive." *Cooper*, 58 M.J. at 58 (citation omitted).

In evaluating the reasons for the delay in this case, the military judge found the following facts: (1) there was no evidence of an intentional delay; rather, the Government made a "good faith attempt" to join all known offenses into a single proceeding, (2) the reasons for delay are consistent with the Government's timeline, which included the demands and complexity of the investigation and the Coast Guard's trial docket, (3) the additional specification of child pornography was based on information from an ongoing investigation, and (4) the Government pressed to trial despite not completing its investigation.

The military judge's findings regarding the reasons for the delay are not clearly erroneous with respect to the time up until the dismissal of the First Charges for *Cooley I* on May 23, 2013. However, the military judge's findings are not supported by the record for the time period from late May 2013 through October 2013. After the May 23, 2013, dismissal, the Government offered that it continued the investigation, finalized reports, gathered new evidence, conducted interviews, and began investigative measures that had ceased when the first court-martial began. Unlike past cases in which the Government's explanations for delay have been justified, *see Cossio*, 64 M.J. at 256–58, the Government has failed to provide adequate support and evidence in this case. Nothing in the record supports these claims or indicates that the Government acted with reasonable diligence after the May 23, 2013, dismissal. There is no documented activity after the March 2013 CGIS ECS report, which explicitly stated that all investigation of the media provided was complete. Two main points highlight the unreasonableness of the delay.

First, the record shows that the Government possessed all of the necessary information to bring the child pornography charge by March 2013, but chose not to pursue it. The Government obtained Appellant's confession to the

possession of child pornography in July 2012, and corroborated this information no later than March 5, 2013. Additionally, the Government had confirmation of actual child pornography from the March 2013 CGIS ECS report, which was both issued and received prior to the first Article 32, UCMJ, hearing on March 6, 2013.

Second, despite the Government's claim that it was prepared to go to trial in May 2013, the Government failed to take meaningful action to go to trial on virtually identical charges until October 2013. Rather than simply re-referring the original charges and proceeding immediately to trial after the R.C.M. 707 dismissal in May 2013, the Government, without sufficient explanation or support, took the opportunity to delay in order to use information it already possessed to bring an additional charge while Appellant lingered in confinement for more than 170 days. This is not a case like *United States v. Leahr*, 73 M.J. 364, 367–70 (C.A.A.F. 2014), where the accused was not in pretrial confinement and where the Government demonstrated that the delay was occasioned by new information and new charges ... that were in fact new. Moreover, there is no indication in the record that the Government adequately responded to Appellant's repeated speedy trial requests during this time. *Cf. United States v. Morrow*, 16 M.J. 328, 328–29 (C.M.A. 1983) (per curiam) (holding that an appellant's speedy trial rights were violated when the government failed to adequately respond to speedy trial requests or explain delays (citing *United States v. Rowsey*, 14 M.J. 151 (C.M.A. 1982))).

In sum, while we are mindful of the preference for joining all known charges in a single proceeding, we are also mindful that, in theory, the opportunity to dismiss charges without prejudice for violating R.C.M. 707's speedy trial clock offers an opportunity for endless delay, and that Article 10, UCMJ, is one protection to ensure that does not happen. The record does not reflect any information on any charge in May or October of 2013 that was not in the Government's possession on March 2013. There is nothing in the record supporting the reasons for the delay between May and October other than a belated decision to pursue a new charge that was not, in fact, new, and broad statements about the difficulty of the investigation and trial logistics.

While these reasons for delay could certainly be acceptable under different facts or perhaps a more thorough record of the investigation, *see Cossio*, 64 M.J. at 256–58, the Government has not met its burden to provide particularized and appropriate reasons justifying the delay, *see Mizgala*, 61 M.J. at 125; *Seltzer*, 595 F.3d at 1178. This factor too weighs in favor of Appellant.

### c. Demands for speedy trial

"The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is deprived of the right." *Wilson*, 72 M.J. at 353 (internal quotation marks omitted) (quoting *United States v. Johnson,* 17 M.J. 255, 259 (C.M.A. 1984)). Appellant demanded a speedy trial on no fewer than five occasions. Thus, this factor also weighs in his favor.

### d. Prejudice

Given that Article 10, UCMJ, is triggered only when an accused is *in* pretrial confinement, the prejudice prong of the balancing test triggered by pretrial confinement requires something more than pretrial confinement alone. This Court has never held that the mere fact of pretrial confinement constitutes prejudice. *See*, *e.g.*, *United States v. Danylo*, 73 M.J. 183, 188 (C.A.A.F. 2014) (noting in a Sixth Amendment claim, "[W]e have never held that pretrial confinement which exceeds an adjudged sentence is per se prejudicial"); *Cooper,* 58 M.J. at 56–57 (stating that the military judge and trial counsel's apparent belief that pretrial confinement was sufficient to prove prejudice was an incorrect view of the law). To the extent the CGCCA held that there was "no need to address [Appellant's] specific items of alleged prejudice" because "the prejudice of confinement itself weighs significantly against the Government," *Cooley*, 2014 CCA LEXIS 936, at *16, it erred.

Rather, prejudice "should be assessed in the light of the interests of defendants[,] which the speedy trial right was designed to protect." *Mizgala*, 61 M.J. at 129 (internal quotation marks omitted) (quoting *Barker*, 407 U.S. at 532). The three recognized interests of prejudice are (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* The

22

inability of a defendant to adequately prepare his case is the "most serious" interest to be considered when reviewing alleged speedy trial violations for prejudice "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Wilson*, 72 M.J. at 353 (internal quotation marks omitted) (citation omitted).

While we find only minimal prejudice from the delayed expert assistance, that is enough to tip the balance in Appellant's favor. First, the Government forced Appellant to relitigate a request for expert assistance that had previously been approved by a military judge — despite the same charges being included in *Cooley III* that were included in *Cooley I* — resulting in further delay. Second, the expert appointed was not, as the military judge ordered, from AFCCP, but rather one whose "normal practice does not include sex offender treatment" and instead "includes outpatient treatment of most psychiatric disorders affecting children, adolescents and adults." Third, "[d]ue to issues related to the advance notification required to cancel appointments with existing patients," the expert was unable to meet with Appellant until September 30, 2013, four days before the general court-martial, and was unable to administer at least six sexual offender-related tests because he did not have the time. As a result, the expert was only able to form a limited impression of Appellant. Appellant ultimately did not call the expert at trial.

Based on the rulings by two different military judges who determined that expert assistance was necessary, there was a "reasonable probability" that the sentencing determination would have been impacted by the requested defense expert's presentation of mitigating evidence. Because the Government's delay created a situation in which it appears Appellant was hampered in his ability to present evidence in mitigation, the prejudice prong of the *Barker* analysis weighs, however slightly, in Appellant's favor.

### ii. Conclusion

Based on the record evidence before us, and after carefully weighing the *Barker* factors, we conclude as a matter of law that there was an absence of reasonable diligence from the period between the dismissal of *Cooley I*

and trial in *Cooley III*. In balancing the fundamental command of Article 10, UCMJ, the strength of the first three *Barker* factors in favor of Appellant, and the minimal prejudice to Appellant's ability to prepare his case, we conclude that Appellant's Article 10, UCMJ, right to a speedy trial was violated with respect to the First Charges. We therefore affirm the CGCCA's conclusion that the Government violated Article 10, UCMJ, with respect to the First Charges.

### III. JUDGMENT

To the extent that the decision of the United States Coast Guard Court of Criminal Appeals dismissed specifications not properly before it under Article 66(c), UCMJ, the decision is reversed. The decision below is otherwise affirmed.