*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, HACKEL, and BAKER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Emanuel R. SANTOS CRUZ**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202200063**

Decided: 11 September 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Andrea C. Goode (arraignment)
Stephen F. Keane (trial)

Sentence adjudged 3 December 2021 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to paygrade E-1, confinement for 56 months, and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Jackson M. Beach, JAGC, USN*

---

[1] Appellant was credited with having served 296 days of pretrial confinement.

For Appellee:
*Lieutenant James P. Wu Zhu, JAGC, USN*
*Lieutenant R. Blake Royall, JAGC, USN*

Judge BAKER delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Senior Judge HACKEL joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

BAKER, Judge:

Appellant was convicted, pursuant to his pleas, of one specification of wrongful distribution of a controlled substance, one specification of possession with intent to distribute, one specification of possession, one specification of possessing a firearm in relation to a drug trafficking offense, one specification of possessing firearms not identified by a serial number, and three specifications of disorderly conduct, in violation of Articles 112a and 134, Uniform Code of Military Justice [UCMJ].[2] In his sole assignment of error [AOE], Appellant asserts the Government violated his speedy trial rights under Article 10, UCMJ, by confining him for 296 days before trial despite his demands for a speedy trial.[3] We find no prejudicial error and affirm.

## I. BACKGROUND

On 23 December 2020, the Oceanside, California Police Department [OPD] contacted Naval Criminal Investigative Service [NCIS] regarding its ongoing investigation of Appellant. On 8 January 2021, NCIS joined the investigation. On 13 and 15 January 2021, OPD conducted controlled purchases of unserialized firearms and 3.5 grams of cocaine from Appellant. On 10 February 2021, Appellant was apprehended and placed into pretrial confinement at the Marine Corps Base Camp Pendleton Brig.

———

[2] 10 U.S.C. §§ 912a, 934 (the two specifications under Art. 134 were charged as violations of 18 U.S.C. § 924(c) and 26 U.S.C. § 5861(i), applicable through the Federal Assimilative Crimes Act).

[3] 10 U.S.C. § 810.

## A. Investigation

NCIS agents secured a warrant to search Appellant's residence on 4 February 2021. On 10 February 2021, the same day Appellant was apprehended and placed in pretrial confinement, his home and vehicle were searched and some 27 pieces of evidence were seized. Shortly after his apprehension, NCIS Special Agent Tango worked with an OPD detective to interview Appellant and began reviewing and processing the seized evidence.[4] Special Agent Tango reported that the complexity of the case increased due to working with civilian law enforcement. Evidence previously seized by OPD was transferred to NCIS on 18 February 2021.

During February 2021, Special Agent Tango engaged with forensic consultants to determine what evidence would be sent to the U.S. Army Criminal Investigative Laboratory [USACIL] to be tested and analyzed. The USACIL has a pre-submission process requiring NCIS to work with the lab to determine what evidentiary items the lab will accept for examination. On 8, 15, and 21 April 2021, respectively, USACIL provided NCIS with an audio enhancement of the recording from a controlled purchase, its completed analyses of latent prints and controlled substances, and a firearms report.

Early in March 2021, Special Agent Tango traveled to attend NCIS training and was out of the office for seven days. Upon her return, she had to go into quarantine due to COVID-19 exposure for an additional five days. She reported that she continued to work on the investigation remotely during this period.

From 4 to 22 March 2021, NCIS worked to extract information from Appellant's laptop computer. On 16 March 2021, NCIS issued its first interim Report of Investigation [ROI]. In late March 2021, NCIS requested assistance from the Bureau of Alcohol, Tobacco, Firearms, and Explosives [ATF] to conduct a database query of the firearms seized and to test a seized firearm suppressor.

Special Agent Tango began the process of securing a command authorization to search Appellant's phone on 29 March 2021, which had been seized along with other evidentiary items. Authorization was granted on 5 April 2021. Shortly after that date, on 7 April 2021, the phone was delivered to the NCIS Cyber Directorate. The NCIS Cyber Directorate was unable to break the en-

---

[4] All names used in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms.

cryption on all of the phone's contents. However, the Cyber Directorate did recover and extract some 35,670 unencrypted Snapchat messages. NCIS issued its second ROI on 13 April 2021.

Special Agent Tango received a spreadsheet version of the recovered messages from the NCIS Cyber Directorate on 27 April 2021 and, on 29 April 2021, began her review. She reported reviewing several hundred Snapchat messages per day. Special Agent Tango's Supervisory Special Agent testified that this manner of manual searching, while slower than a keyword or similar search process, is a best practice. During Special Agent Tango's search she identified contacts suspected of being Marines. Among those identified by Special Agent Tango was a Marine interviewed by NCIS on 3 June 2021, who reported purchasing cocaine, marijuana, lysergic acid diethylamide, Percocet, and a firearm from Appellant. Special Agent Tango completed her review of the Snapchat messages by 24 June 2021.

## B. Charges, Preliminary Hearings, and Referral of Charges

Concurrent with the then-ongoing investigation, on 4 March 2021 the United States preferred a single charge and specification against Appellant for distributing cocaine (Charge Sheet 1). Then on 16 March 2021 an additional charge, with three specifications of wrongful possession of a controlled substance, was preferred (Charge Sheet 2). On 18 March 2021 a second additional charge was preferred with three specifications for wrongful possession of unserialized firearms (Charge Sheet 3). The Government dismissed specifications 1 and 3 of the additional charge (Charge Sheet 2) and specification 3 of the second additional charge (Charge Sheet 3) on 16 April 2021. On the same day, the Government preferred a third additional charge with two specifications for wrongful possession of a controlled substance (Charge Sheet 4). On 30 April 2021, the Government dismissed all of the remaining charges on Charge Sheets 1-4, and preferred new charges (Charge Sheet 5).

This case involved two preliminary hearings, the first of which was scheduled for 19 March 2021. After multiple defense continuance requests, the preliminary hearing was ultimately rescheduled for 21 April 2021, and the convening authority granted 32 days of delay attributable to the defense. Appellant then waived his preliminary hearing on the initial charges (Charge Sheets 1, 2, 3, and 4), and later waived the preliminary hearing on Charge Sheet 5, on 20 April 2021, and 4 May 2021, respectively.

The convening authority referred charges on Charge Sheet 5 to a general court-martial on 21 May 2021. The military judge issued a Trial Management Order on 25 May 2021 with trial scheduled for the week of 20 September 2021.

Appellant was arraigned on 27 May 2021, at which point he had been in pretrial confinement for 106 days.[5]

The Government dismissed all charges and specifications of Charge Sheet 5 without prejudice on 28 June 2021, and preferred Charge Sheet 6 on 14 July 2021. Prior to preferral of Charge Sheet 6, trial counsel requested 30 days of excludable delay from the convening authority on 8 July 2021, which the convening authority granted on 13 July 2021. On 16 July 2021, a preliminary hearing was held and the hearing officer found probable cause. On 21 July 2021, the convening authority referred Charge Sheet 6 to a general court-martial. Appellant was arraigned on Charge Sheet 6 on 27 July 2021. Appellant had been in pretrial confinement for 167 days.

The military judge issued a new Trial Management Order on 27 July 2021. The parties agreed to a schedule that included a motions hearing on 21 October 2021, and trial dates for the week of 29 November 2021.[6] Appellant entered into a plea agreement on 1 November 2021, which was approved by the convening authority on 3 November 2021. In accordance with the plea agreement, a final additional charge, with two specifications of Article 134 (disorderly conduct), was referred on 22 November 2021 (Charge Sheet 7). At this point, Appellant had been in pretrial confinement for 285 days. Appellant pleaded guilty pursuant to the plea agreement and was sentenced on 3 December 2021, 296 days after he was placed in pretrial confinement.

**C. Speedy Trial Demands and Defense Motion to Dismiss**

Appellant submitted two demands for a speedy trial. The first was included with his civilian defense counsel's Notice of Representation dated March 4, 2021. He renewed his demand on 9 July 2021. Appellant also filed a motion to dismiss due to violations of Article 10, UCMJ, and Rule for Courts-Martial [R.C.M.] 707 on 4 October 2021. Oral Argument was held on 21 October 2021; the military judge denied the motion via a written ruling on 18 November 2021.[7] In his written ruling denying the defense motion to dismiss for speedy

---

[5] This was the first of two arraignments.

[6] Government reported originally proposing trial dates that aligned with an unexecuted TMO: 22 and 25 to 29 October 2021. *See* App. Gov. Br. at 25. *See also* App. Ex. VII at 121-122.

[7] App. Ex. XLVIII. During the 3 December 2021, Art. 39(a), UCMJ, session the military judge also indicated that he was denying the defense motion for additional confinement credit for claimed violations of Article 13, UCMJ.

trial, the military judge concluded that the Government had exercised reasonable diligence in bringing Appellant to trial.[8]

Additional facts necessary to resolve the AOE are discussed below.

## II. DISCUSSION

"[A] litigated speedy trial motion under Article 10 is not waived by a subsequent unconditional guilty plea."[9] We review Article 10, UCMJ, speedy trial claims de novo.[10] Article 10 demands that when a servicemember is placed in pretrial confinement, "immediate steps shall be taken . . . to try the person or to dismiss the charges and release the person." In reviewing Article 10 claims, courts do not require "constant motion" from the Government, but do require "reasonable diligence in bringing the charges to trial."[11] This "duty imposed on the Government immediately to try an accused who is placed in pretrial confinement does not terminate simply because the accused is arraigned."[12] Rather, it extends to "at least the taking of evidence."[13]

In conducting our review, we give substantial deference to the military judge's findings of fact, reversing only if they are clearly erroneous.[14] Here we find no clear error in the military judge's findings of fact.[15] Based upon the submissions from the Government and Defense, he created a timeline laying out the dates from Appellant being placed in pretrial confinement on 10 February 2021, through the 27 July 2021, arraignment.[16] He further provided a summary of the investigation and other dates relevant to the ruling.[17] As these

---

[8] App. Ex. XLVII at 9. The military judge concluded there was no violation of Article 10, UCMJ, or R.C.M. 707.

[9] *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005).

[10] *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003).

[11] *Mizgala*, 61 M.J. at 127 (quoting *United States v. Tibbs*, 15 C.M.A. at 353).

[12] *Cooper*, 58 M.J. at 60.

[13] *Id.*

[14] *Mizgala*, 61 M.J. at 127.

[15] App. Ex. XLVII at 1-4.

[16] At which point Appellant had been in pretrial confinement for 167 days.

[17] App. Ex. XLVII at 1-4.

dates are firmly established by the record, we find no cause to find that they are "clearly erroneous."

 "Our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the Appellant made a demand for speedy trial; and (4) prejudice to the Appellant."[18]

## A. Length of Delay

The length of delay constitutes a triggering mechanism under Article 10.[19] Here, Appellant spent 296 days in pretrial confinement. We conclude this delay is sufficient to trigger a full analysis using the remaining factors.

## B. Reasons for the Delay

For this factor, "different weights should be assigned to different reasons."[20] First, a deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government.[21] "[M]ore neutral reason[s] such as negligence or overcrowded courts also weigh against the Government, though less heavily."[22] "[A] valid reason, such as a missing witness, should serve to justify appropriate delay."[23] In addition, "the Government has the right (if not the obligation) to thoroughly investigate a case before proceeding to trial."[24] In contrast, "delay caused by the defense weighs against the

---

[18] *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Mizgala*, 61 M.J. at 129 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972))).

[19] *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (holding that the 145-day period the appellant spent in pretrial confinement was sufficient to trigger an Article 10 inquiry); *United States v. Cossio*, 64 M.J. 254, 257 (C.A.A.F. 2007) (holding that a 117-day period of pretrial confinement triggered a full Article 10 inquiry).

[20] *Barker*, 407 U.S. at 531.

[21] *Id.*

[22] *United States v. Cooley*, 75 M.J. 247, 260 (C.A.A.F. 2016) (citing *Barker*, 407 U.S. at 531) (alterations in original; internal quotation marks omitted).

[23] *Id.*

[24] *Cossio*, 64 M.J. at 258.

defendant."[25] So, "outside of an explicit delay caused by the defense, the Government bears the burden to demonstrate and explain reasonable diligence in moving its case forward in response to a motion to dismiss."[26]

The delay in this case was almost entirely attributable to the Government, excepting 32 days from 19 March to 20 April 2021, during which the Defense requested delays prior to the first scheduled preliminary hearing. As such, the Government bears the burden of demonstrating reasonable diligence for 264 days.

In his ruling, the military judge found that the "[G]overnment acted with reasonable diligence in bringing the Accused to trial."[27] In support of this conclusion, the military judge concluded that there was a "certain amount of complexity involved with the investigation."[28] He added that there was voluminous seized physical and electronic evidence to examine and new evidence was introduced by a co-conspirator, who wasn't identified until June 2021.[29] It is well established that the delay that courts will tolerate for a serious complex crime is considerably more than that for an ordinary street crime.[30]

NCIS investigators took significant investigative steps from February to June 2021. They prepared two ROIs, dated 16 March 2021 and 13 April 2021. They engaged in the preliminary process with USACIL to provide evidence for analysis, and received responses from USACIL on 8, 15, and 27 April 2021. NCIS provided evidence to ATF for analysis. After receiving a command authorization for search and seizure, NCIS provided Appellant's phone to the NCIS Cyber Directorate on 7 April 2021. NCIS Cyber Directorate provided a spreadsheet of the 35,670 Snapchat messages they extracted to Special Agent Tango on 27 April 2021. Special Agent Tango then began the process of going through several hundred messages per day, concluding her review on 24 June 2021. According to Special Agent Tango's Supervisory Special Agent, while more time-consuming, individually reviewing messages in this manner is a best practice. As a result of Special Agent Tango's review, additional investigative steps were pursued, including an interview on 3 June 2021 of a Marine

---

[25] *Cooley*, 75 M.J. at 260 (quoting *Barker v. Wingo*, 407 U.S. 514, 531 (1972)).

[26] *Id.* (citing *Mizgala*, 61 M.J. at 125).

[27] App. Ex. XLVII at 8.

[28] App. Ex. XLVII at 8.

[29] App. Ex. XLVII at 3, 8.

[30] *Cooley*, 75 M.J. at 260 (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)).

who reported purchasing further controlled substances and a firearm from Appellant.

During the investigation the Government concurrently took procedural actions necessary to get the case to trial, including the service of charges, discovery, and coordination of preliminary hearings. The initial charge (Charge Sheet 1) was preferred shortly after Appellant was placed in pretrial confinement on 4 March 2021. Within a few weeks the additional charges contained in Charge Sheets 2 and 3 were preferred. Then, on 16 April 2021, the third additional charge sheet (Charge Sheet 4) was preferred. On 30 April 2021, the Government dismissed the original charge and additional charges to this point (Charge Sheets 1-4), and preferred another set of charges (Charge Sheet 5). These charges (Charge Sheet 5) were referred to a general court-martial on 21 May 2021, and Appellant was arraigned on 27 May 2021.

One month later, on 28 June 2021, the Government again withdrew and dismissed all charges and specifications (Charge Sheet 5) without prejudice. On 8 July 2021, trial counsel requested that the General Court-Martial Convening Authority grant 30 days of excludable delay for purposes of R.C.M. 707, listing the litany of investigative actions taken by NCIS after Appellant's confinement, and describing myriad pending "major investigative steps."[31] Appellant objected to the General Court-Martial Convening Authority's grant of excludable delay and repeated his requests for discovery and a speedy trial.[32] Over Defense objections, the General Court-Martial Convening Authority approved 30 days of excludable delay on 13 July 2021.[33] The Government preferred Charge Sheet 6 on 14 July 2021.

A preliminary hearing was held on Charge Sheet 6 on 16 July 2021, and the preliminary hearing officer issued his report on 21 July 2021. Charge Sheet 6 was referred to a general court-martial that same day. Appellant was arraigned on 27 July 2021. On the day of the arraignment the military judge issued a Trial Management Order with the agreement of the Government and Defense.[34] Appellant did not object to the timeline contained within the Order, although the Order provided that the trial would begin on 29 November 2021 – 125 days after the date of arraignment, and 292 days since the initiation of

---

[31] App. Ex. III at 99-100.

[32] App. Ex. III at 94-96.

[33] App. Ex. III at 98.

[34] App. Ex. V.

pretrial confinement. On 4 October 2021, the Defense filed a motion to dismiss for violations of Appellant's right to a speedy trial.[35]

We agree with the military judge's analysis of this portion of the timeline— the case was substantially complex, involving new evidence introduced following an investigatory interview and search in early June, and voluminous physical and electronic evidence. The many investigative steps of this investigation were both practical and necessary, particularly given the complex nature of the charges and evidence. Moreover, the pace at which they were accomplished shows reasonable diligence on the part of law enforcement. And once the investigation was completed, the Government moved expeditiously to prefer the ultimate charges (Charge Sheet 6).[36] The timeline reveals no significant gaps or inactivity in the law enforcement investigation or trial counsel's efforts.[37] Arguably, NCIS could have hastened its investigation by sooner seeking authorization to seize and search Appellant's phone or assigning additional personnel to review the thousands of messages found on it, and thereby accelerated the Government's preferral actions. However, the requirement is not for maximum possible speed, but for reasonable diligence, which we find here.

Similarly, we also find the subsequent delay from arraignment until trial to be reasonable. Following arraignment, "a change in the speedy-trial landscape has taken place. This is because after arraignment, 'the power of the military judge to process the case increases, and the power of the [Government] to affect the case decreases.'"[38] In short, once Appellant was arraigned, the military judge had the "power and responsibility to force the Government to proceed with its case if justice so require[d]."[39]

In the Trial Management Order, issued by the military judge on 27 July 2021, he scheduled Appellant's trial to begin on 29 November 2021, 125 days after his arraignment. During this period, the military judge held the parties accountable for trial milestones and demonstrated an urgency towards motions practice, including holding a robust Article 39(a) session to cover a number of

---

[35] App. Ex. II.

[36] *Mizgala*, 61 M.J. at 129.

[37] *Id*. at 127 (Short periods of inactivity are not fatal to an otherwise active prosecution.) (citing *Tibbs*, 15 C.M.A. at 353).

[38] *Cooper*, 58 M.J. at 60 (quoting *United States v. Doty*, 51 M.J. 464, 465-66 (C.A.A.F. 1999)) (alternation in original).

[39] *Id*.

motions. As such, the record is clear that the military judge firmly and effectively kept the Government on task in accordance with the trial dates and milestones—to which Appellant offered no objections or reservations. In fact, due to civilian counsel's schedule, Appellant requested a later trial date than that proposed by the Government.[40]

Viewing the entire period of delay, we agree with the military judge that the length of delay is reasonable. The pace of the Government's actions was not for the purpose of delaying trial or increasing the amount of time Appellant spent in pretrial confinement. We find that the reasons for the delay in this case were reasonable and that this factor favors the Government.

**C. Demand for Speedy Trial**

"The [Accused's] assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the [Accused] is deprived of the right."[41] Appellant made his first demand for a speedy trial in his civilian counsel's Notice of Legal Representation letter dated 4 March 2021.[42] The letter's penultimate paragraph concludes with: "My client demands speedy trial."[43] The Defense renewed Appellant's demand for a speedy trial on 9 July 2021, at which point he had been in pretrial confinement for 149 days. While we conclude that this factor favors the Defense, the fact Appellant requested several delays gives this factor slight weight.

**D. Prejudice to Appellant**

"Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[44] We, therefore, examine the question of prejudice in light of three important interests the Supreme Court identified in *Barker*: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern; and (3) to limit the possibility that the Defense will be impaired.[45] "Of these, the most serious is the last, because the

---

[40] App.Ex. II at 12.

[41] *Wilson*, 72 M.J. at 353 (quoting *United States v. Johnson*, 17 M.J. 255, 259 (C.M.A. 1984)).

[42] App. Ex. III at 3.

[43] *Id.*

[44] *Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532).

[45] *Barker*, 407 U.S. at 532.

inability of [an accused] adequately to prepare his case skews the fairness of the entire system."[46]

Appellant contends that he suffered oppressive pretrial confinement conditions.[47] Before trial, Defense filed a motion for appropriate relief, alleging violations of Article 13, UCMJ, for illegal pretrial punishment.[48] The military judge concluded that the defense did not meet its burden in establishing an Article 13 violation. Appellant later agreed that his Article 13, UCMJ, claim was waived by his unconditional guilty plea.[49] We concur with the military judge; the conditions of confinement were not oppressive. We also conclude that the length of Appellant's pretrial confinement was not oppressive.[50] This factor favors the Government.

Appellant further contends that he suffered unwarranted anxiety and concern as a result of the length of his pretrial confinement and the number of charge sheets preferred by the Government. But Appellant fails to articulate how the Government's practice of continuing to prefer and refer charges until just prior to his arraignment on 27 July 2021 equates to particularized anxiety. Appellant cannot reasonably argue that he was unaware of the general nature of the charges, despite the Government's disjointed efforts to perfect its case prior to arraignment. Further, in addition to detailed military defense counsel, Appellant had legal representation by civilian defense counsel from 4 March 2021 through both of his arraignments, pretrial motions, plea negotiations, and eventual conviction and sentencing.[51] We do not find that the anxiety and concern caused by Appellant's pretrial confinement exceeded the norm.[52] This factor also favors the Government.

As to the final *Barker* prong, impairment of the Defense, the Defense conceded that "Appellant makes no specific claim of impairment of the defense"

---

[46] *Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532).

[47] *See* App. Ex. XII. Defense Motion for Appropriate Relief (Article 13: Illegal Pretrial Punishment).

[48] App. Ex. XII.

[49] R. at 289-290; R. at 299-304; App. Ex. LV at 4.

[50] App. Ex. XLVII at 8. *Cossio*, 64 M.J. at 257. *See also, Mizgala*, 61 M.J. at 129 (finding conditions of confinement were not unduly harsh or oppressive).

[51] App. Ex. III at 3.

[52] *Mizgala*, 61 M.J. at 129.

and, other than time, provided no argument in support of such impairment.[53] While we concur that "affirmative proof of particularized prejudice is not essential to every speedy trial claim,"[54] we note that neither this Court, nor our Superior Court, has ever "held that the mere fact of pretrial confinement constitutes prejudice."[55] Additionally, there is no indication of any loss of evidence or impact to the preparation of Appellant's case.[56] Accordingly, this factor, too, favors the Government.

Balancing these factors, we conclude that Appellant was not denied his right to a speedy trial under Article 10, UCMJ.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[57] The findings and sentence as approved by the convening authority are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[53] App. Def. Br. at 21.

[54] *Doggett v. United States*, 505 U.S. 647, 654-55 (1992).

[55] *Cooley*, 75 M.J. at 262.

[56] *United States v. Danylo*, 73 M.J. 183, 189 (C.A.A.F. 2014).

[57] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.