*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, BURGTORF, and GROSS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Derek J. HEMRY**
Operations Specialist Seaman Recruit (E-1), U.S. Navy
*Appellant*

**No. 202300051**

_____

Decided: 2 May 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Rachel E. Trest

Sentence adjudged 30 November 2022, by a general court-martial convened at Naval Station Mayport, Florida, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 59 months, and a dishonorable discharge.

For Appellant:
*Lieutenant Colonel Matthew E. Neely, USMC*

For Appellee:
*Lieutenant Lan T. Nguyen, JAGC, USN* (Argued)
*Lieutenant R. Blake Royall, JAGC, USN* (On brief)
*Major Tyler W. Blair, USMC* (On brief)

Judge GROSS delivered the opinion of the Court, in which Chief Judge HOLIFIELD joined. Judge BURGTORF filed an opinion concurring in part, and dissenting in part.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

GROSS, Judge:

A military judge sitting alone as a general court-martial convicted Appellant, pursuant to his pleas, of attempted receipt of child pornography, receipt of child pornography, and indecent conduct, in violation of Articles 80 and 134, Uniform Code of Military Justice [UCMJ].[1]

Appellant asserts two assignments of error [AOEs]: (1) the Government violated his right to a speedy trial, under Article 10, UCMJ, due to 245 days of pre-arraignment delay; and (2) he is entitled to 224 days of additional pretrial confinement credit, despite having already received the same credit in his earlier court-martial. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant appeals his conviction and sentence of his second court-martial arising from an investigation into his online communications with real and purported minors. In November of 2021, Appellant was suspected of having sexual communications with a purported minor named "Maddy" who was the online persona of Special Agent Mike with the Federal Bureau of Investigation [FBI]. Because Appellant was an active duty Sailor, the Naval Criminal Investigative Service [NCIS] eventually took the lead on his case and interrogated Appellant after reading him his rights under Article 31(b), UCMJ. During this questioning, Appellant admitted that not only had he engaged in sexual communications with "Maddy," but that he also had sexual communications with several other minors, about whom law enforcement had not previously known.

Appellant was subsequently placed into pretrial confinement for both his communications with "Maddy" and the other admitted misconduct. Because

---

[1] 10 U.S.C. § 880, 934.

investigation of the previously unknown misconduct required significant digital forensic analysis, follow-up interviews, and other actions, the Government ultimately decided to prosecute Appellant at two courts-martial. The Government proceeded to trial for the offenses involving "Maddy" (*Hemry I*) while Government agents continued to investigate the further misconduct that Appellant disclosed during his interview. Appellant ultimately pleaded guilty in *Hemry I* and during the sentencing phase of that case received 224 days of pretrial confinement credit.

Prior to his conviction in *Hemry I*, Appellant made a demand for speedy trial specific to the misconduct still under investigation. The Government eventually charged Appellant with five specifications of violating Article 80, UCMJ, three specifications of violating Article 120b, UCMJ, and eight specifications of violating Article 134, UCMJ (*Hemry II*).

After litigating an unsuccessful motion under Article 10, UCMJ in *Hemry II*, Appellant entered into a plea agreement preserving his right to appeal that ruling. Subsequent to the military judge accepting Appellant's guilty plea in *Hemry II*, Appellant made a timely motion to receive credit for the same 224 days of pretrial confinement applied to the sentence in *Hemry I*. The military judge denied Appellant's request for credit and instead awarded Appellant only 104 days of pretrial confinement credit that had not previously been credited against a conviction.

In denying Appellant's motions under Article 10, UCMJ, and for pretrial confinement credit, the military judge made extensive findings of fact and conclusions of law that form the basis for Appellant's appeal.

## A. Timeline.

The military judge's findings of fact relevant to this appeal are set forth below, along with findings that we make to supplement her findings where necessary.

On 15 November 2021, NCIS obtained a Command Authorization for Search and Seizure for Appellant's cell phone based on his communications with "Maddy."

On 16 November 2021, the Government placed Appellant in pretrial confinement after NCIS agents interviewed Appellant that day regarding his internet activity with "Maddy." Appellant waived his rights, confessed, cooperated with investigators, and granted access to all his electronic devices.

Appellant confessed to having sexual conversations with "Maddy," as well as engaging in sexual conversations, and sending and receiving pornography with other minors. He also told investigators that he had sold pornographic

pictures of an 18-year-old girl, "Laura," while pretending to be "Laura" online.[2] Appellant provided aliases of the victims and identified the social media platforms used.

On 18 November (day 3 of confinement), law enforcement sent Appellant's electronic devices, including his cell phone, laptop computer, two hard drives, and his PlayStation 4, for forensic analysis at the Department of Defense Cyber Crime Center [DC3],[3] and sent preservation letters to social media providers.

On 23 November (day 8), DC3 declined to begin an extraction on all of Appellant's electronic devices, other than his cell phone, due to only having a permissive authorization from Appellant, which could have been revoked during its analysis. DC3 then shipped all of Appellant's devices other than the cell phone back to NCIS.

On 10 December (day 25), DC3 began the extraction of Appellant's cell phone.[4]

On 11 December (day 26), the Government obtained a Command authorization for a search and seizure for all of Appellant's electronic devices.

On 14 December (day 29), the Government shipped Appellant's devices back to DC3 for analysis. DC3 began extraction and analysis of Appellant's cell phone, which are functions performed by different individuals.

On 16 December (day 31), an analyst at DC3 began working on the extraction of Appellant's cell phone.

On 30 December (day 45), DC3 sent a preliminary report of the extraction. The report confirmed child sexual abuse material, and social media usernames that required further investigation.

On 11 January 2022 (day 57), DC3 provided notice that its review of Appellant's cell phone would be completed in late January and the remaining electronic devices would be complete in March.

---

[2] All names in this opinion other than those of Appellant, counsel, and the military judge, are pseudonyms.

[3] Defense Computer Forensic Laboratory (DCFL) is a subordinate command to Defense Cyber Crime Center (DC3). We will throughout refer to the parent command, rather than draw a distinction between the two different organizations.

[4] R. at 57. This finding of fact was not included in the military judge's ruling, but is taken from the testimony of Ms. Mason at DC3. Ms. Mason described the term "extraction" as making a digital copy of all data contained on a device for subsequent review by an analyst. R. at 54-56.

On 18 January (day 64), the Government moved forward with charges—supported by then-available evidence—preferring five specifications of attempted sexual offenses (*Hemry I*).

On 19 January (day 65), trial counsel requested a Preliminary Hearing Officer for an Article 32 hearing. Defense counsel was detailed on 21 January 2022 (day 67), and the hearing was scheduled for 31 January 2022 (day 77). Appellant requested a continuance until 15 February.

On 7 February (day 84), DC3 reported that review of Appellant's phone had concluded, but other devices were still being analyzed.

On 10 February (day 87), Appellant waived his right to an Article 32 hearing in *Hemry I*.

On 11 February (day 88), the Government forwarded charges to the convening authority.

On 17 February (day 94), DC3 sent its full forensic report on Appellant's cell phone to NCIS.

On 23 February (day 100), DC3 sent the final forensic report on all of Appellant's electronic devices, identifying possible victims of child sexual abuse across multiple applications. The Government began pursuing warrants to identify victims through Discord and Snapchat.

On 25 February 2022 (day 102), the convening authority referred charges in *Hemry I*.[5] Trial counsel requested an arraignment date of 2 March from the trial judiciary.

On 7 March (day 112), Appellant requested a delay of arraignment in *Hemry I* until March 8. Trial Counsel proposed a trial start date of 9 May, and Appellant proposed a start date of 13 June, to permit time for a negotiated outcome. The parties finally agreed on a start date of 27 June.

On 9 March (day 114), the Government applied for warrants for Appellant's social media accounts.

On 22 March (day 127), Appellant demanded a speedy trial for all uncharged misconduct that he had admitted to during his interview with NCIS agents.

On 23 March (day 128), the Government submitted new search warrant applications, which the Military Judge granted on 24 March (day 129). One social media site, Discord, provided responsive materials on 28 March (day

---

[5] *United States v. Hemry*, No. 202200229, 2023 CCA LEXIS 40 (N-M. Ct. Crim. App. Jan. 27, 2023) (unpublished) (*Hemry I*).

133). Another social media application, Snapchat, provided responsive materials on 5 April (day 141).

Between 5-13 April (days 141-49) NCIS identified an additional victim in the results from Snapchat, interviewed the victim and her parents, and sent the victim's devices to DC3 for examination. This victim was "Laura," whom Appellant had claimed was 18, but in reality was 12 years old.

In April, Special Agent Alpha spent time reviewing the materials from DC3, which involved decoding hundreds of URL-coded links, spending "several hours daily" on this review while recovering from surgery.[6] Special Agent Alpha considered this his "number one priority" due to Appellant's pretrial confinement.[7]

On 18 April (day 154), Appellant sent the convening authority a signed plea agreement, in *Hemry I*. Appellant agreed to serve 6-10 months of confinement, concurrently.

On 19 April (day 155), defense counsel requested pausing Appellant's Trial Management Order in *Hemry I* due to ongoing plea negotiations.

On 22 April (day 158), the plea agreement was signed in *Hemry I*.

On 29 April (day 165), DC3 completed extraction of the child victim "Laura's" electronic devices.

On 4 May (day 170) DC3 completed review of the extractions from the child victim's electronic devices.

On 5 May (day 171), the Government identified a second child victim in Reno, Nevada.

On 13 May (day 179), the Government identified a third child victim in Bakersfield, California.

On 24 May (day 190), the Government preferred charges against Appellant in *Hemry II*, for these additional victims. The Government requested a Preliminary Hearing Officer.

On 26 May (day 192), the Government dismissed the charges and preferred new charges.

On 31 May (day 197), the Government assigned a Preliminary Hearing Officer.

---

[6] R. at 35.

[7] R. at 41.

On 1 June (day 198), the Government notified Appellant of the charges.

On 9 June (day 206), the Government conducted a forensic interview of the third child victim.

On 10 June (day 207), Appellant waived his right to an Article 32 hearing in *Hemry II.*

On 22 June (day 219), the Government interviewed the second child victim.

On 28 June (day 225), Appellant pleaded guilty to charges in *Hemry I.* The military judge awarded nine months and fifteen days of confinement, and a dishonorable discharge. He received 224 days of pretrial confinement credit.

On 6 July (day 233), the Government referred charges in *Hemry II.*

On 11 July (day 238), trial counsel requested an arraignment on 19 July. The Parties agreed on trial management order dates on 18 July (245), with a trial scheduled for 31 October. Due to court availability, the Parties agreed to a trial start date of 28 November 2022 (day 342).

On 14 July (day 241), Appellant was released from confinement for his convictions in *Hemry I.* He was then immediately returned to pretrial confinement.

On 19 July (day 246), the Government arraigned Appellant on charges for *Hemry II.*

On 20 July (day 247), an Initial Review Officer ordered Appellant released from pretrial confinement.

On 22 July, Appellant agreed to a trial management order setting trial for 31 October 2022 and did not renew his demand for speedy trial.

Although not included in the military judge's findings, the following facts also inform our decision on Appellant's claim that he was denied a speedy trial.

On 26 July, Appellant was barred from entering Naval Air Station [NAS] Jacksonville because he was a registered sex offender. Appellant had access to Naval Station Mayport—forty-five minutes away—where he was stationed, and his lead trial defense counsel was located.

On 3 August, Appellant again requested access to NAS Jacksonville. The Commanding Officer granted temporary access on 5 August, due to connectivity issues at Defense Services Office, Naval Station Mayport.

On 24 August (day 248), the Government ordered Appellant back into pretrial confinement, determining Appellant had violated his sex offender registration by creating new social media accounts and communicating online with minors.

On 6 September (day 261), Appellant moved to dismiss his charges for violating his right to a speedy trial, under Article 10, UCMJ. The Government's response at trial argued that the relevant period was 54 days, excluding earlier confinement as only applicable to *Hemry I*.[8]

After a hearing, the military judge denied Appellant's motion in a written ruling, on 4 November 2022. The military judge's ruling contained findings of fact, including a timeline showing the total days of confinement, and corresponding investigative and prosecutorial steps. The military judge conducted an analysis under *Barker v. Wingo*,[9] finding that the "Government proceeded with reasonable diligence."[10]

On 22 October (day 307), Appellant entered into a plea agreement, agreeing to plead to 3 specifications with a sentence limitation that included a minimum of 48 months and a maximum of 60 months of confinement for each specification, to be served concurrently.

Appellant pleaded guilty on 29 November (day 338). The military judge sentenced Appellant on 30 November to 55 months confinement for Specification 4 of Charge I, 59 months of confinement for Specification 4 of Charge III, and 58 months of confinement for the specification of the Additional Charge, to be served concurrently for a total of 59 months of confinement, consistent with the plea agreement.

**B. Pretrial Confinement Motion**

During the sentencing case, Appellant argued that he was entitled to additional pretrial confinement credit. The Government agreed that Appellant was entitled to 104 days of credit for the time since Appellant completed his sentence in *Hemry I*, and was thereafter returned to pretrial confinement. The Government argued that Appellant had already received credit for the contested 224 days during *Hemry I*.

The military judge denied Appellant's motion for an additional 224 days of pretrial confinement credit, adopting the Government's reasoning that awarding credit for the entire time in pretrial confinement in both *Hemry I* and *Hemry II*, would result in a windfall.

The military judge relied on R.C.M. 1102(b)(C)(v), as guidance when two separate courts-martial exist. She found that the Government had no "malice

---

[8] R. at 98; App. Ex. VII at 18.

[9] 407 U.S. 514 (1972).

[10] App. Ex. XXII at 21.

[n]or was trying to maneuver in any way in bad faith [when] they brought these two separate cases."[11] The military judge referenced her earlier speedy trial ruling and reasoned against crediting pretrial confinement for both courts-martial because: "the government had evidence to proceed forward in a judicious manner for *Hemry I* case which was the undercover chats, and the government needed more time . . . to explore electronic devices then . . . sent to [DC3] for extraction analysis, that they had to wait a period of time."[12]

## II. DISCUSSION

### A. Speedy Trial, Under Article 10, UCMJ.

We review Article 10, UCMJ, speedy trial claims de novo.[13] "[W]e are bound by the facts as found by the military judge unless . . . clearly erroneous."[14]

"When any person subject to this chapter is ordered into . . . confinement before trial, immediate steps shall be taken . . . to try the person or dismiss the charges . . . ."[15] Article 10, UCMJ, does not require constant movement, but requires "reasonable diligence in bringing the charges to trial."[16]

We analyze Article 10, UCMJ, using the *Barker* factors: "(1) the length of the delay, (2) the reasons for the delay, (3) whether the accused made a demand for a speedy trial, and (4) prejudice to the appellant."[17]

#### 1. Length of Delay

Appellant alleges that the relevant period for speedy trial analysis includes the 245 days of pretrial confinement, prior to arraignment. This period exceeds time that the Court of Appeals for the Armed Forces has found sufficient to trigger speedy trial analysis.[18]

---

[11] R. at 372.

[12] *Id.*

[13] *United States v. Cooley*, 75 M.J. 247, 259 (C.A.A.F. 2016).

[14] *Id.*

[15] Article 10, UCMJ.

[16] *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations and internal quotations omitted).

[17] *Cooley*, 75 M.J. at 259 (citations omitted).

[18] *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (finding 145 days triggered speedy trial analysis under Article 10, UCMJ).

*2. Reasons for the Delay*

Appellant argues that the delay in his case was unreasonable because the Government possessed all necessary information on the day he confessed. Appellant also argues that the Government was dilatory because it could have sent warrants to Snapchat and Discord in February upon receipt of DC3's report of Appellant's cell phone, and because in April 2022, NCIS only assigned a single agent who was convalescing to review the digital evidence seized from the warrants.

Contrary to Appellant's claim, the facts do not show that the Government was negligent or dilatory in the processing of his case. The delay can largely be attributed to the time the Government needed for analysis, extraction of data from electronic devices, and follow-up interviews with child victims across multiple states. Realizing the time needed for these steps, the Government proceeded with charges in *Hemry I*, which were supported by the then-available evidence. The Government had "the right (if not the obligation) to thoroughly investigate [its] case before proceeding to trial."[19] Although Appellant may disagree with the way the Government investigated his case, a disagreement on investigative tactics is not sufficient to find that the Government failed to show reasonable diligence. The delay here was reasonable, due to the complexity of this case, involving multiple victims and forensic analysis of Appellant's and the victims' electronic devices.

When Appellant first confessed to additional misconduct on 16 November, this was the first indication that Appellant had done anything other than chat with "Maddy." The Government was obligated to investigate this additional misconduct. Although Appellant claims that DC3 "declined to 'rush' their analysis of [Appellant's] devices"[20] the testimony of the digital examiner was actually that he *could not* rush his analysis, because doing so could cause him to miss something in the examination.[21]

This does not mean that the Government's investigation was perfect, but that is not the standard.[22] The Government assigned a single special agent, who was convalescing from surgery, sent Appellant's electronic devices back and forth, and needed multiple search warrant applications to secure evidence. The Government also mistakenly believed at trial that the relevant confinement period was 54 days, attributing the difference in confinement to *Hemry*

---

[19] *United States v. Cossio*, 64 M.J. 254, 258 (C.A.A.F. 2007).

[20] Appellant's Br. at 7.

[21] R. at 87.

[22] *Mizgala*, 61 M.J. at 129.

*I.* While Appellant makes much of the fact that trial counsel erroneously believed that the speedy trial clock under Rule for Court-Martial 707 and Article 10 were tolled by arraignment in *Hemry I*, the military judge found that despite this erroneous belief, the Government had still moved with reasonable diligence. We agree with the military judge that, although less than ideal, the Government still proceeded with "reasonable diligence."[23]

On balance, the nature of this case, and considering the processing times, this factor favors of the Government.

### 3. Demand for speedy trial

The Court of Appeals for the Armed Forces has found that a speedy trial demand—made after 119 days in confinement—only slightly favored an appellant.[24]

Appellant demanded a speedy trial after 127 days in confinement.

The context of Appellant's speedy trial demand further diminishes this factor from weighing significantly in his favor. Appellant was initially arrested after online communications with an undercover law enforcement agent. He confessed. He fully cooperated, including turning over all his electronic devices. He ultimately negotiated a plea, agreeing to serve a minimum confinement of 48 months (considerably greater than the total 343 days that he spent in pretrial confinement). In both *Hemry I* and *Hemry II*, Appellant on several occasions requested delays in the Trial Management Orders. He never repeated his demand for speedy trial, and after he was ultimately released from pretrial confinement, he requested a trial date beyond that proposed by the Government. This context, together with his later negotiated trial management postponements, reduces the weight we afford this factor in Appellant's favor.

The speedy trial demand favors Appellant slightly, at best. As the Supreme Court held in *Barker* "we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."[25] While we do not find that Appellant's speedy trial demand was made solely for tactical purposes, his actions subsequent to his demand at best send mixed signals.

Appellant attempts to frame his demand for speedy trial as only applying to the Government actions leading up to his arraignment. While we need not

---

[23] *Id.*

[24] *United States v. Wilson*, 72 M.J. 347, 353 (C.A.A.F. 2013).

[25] *Barker*, 407 U.S. at 536.

decide whether an appellant may demand speedy trial only to force an arraignment and then agree to delay and still prevail on a speedy trial claim, such a tactic does inform our analysis of this factor as well as any claim of prejudice, discussed below.

### 4. *Prejudice*

Our prejudice analysis focuses on preventing oppressive pretrial confinement, minimizing anxiety and concern of an accused, and limiting the possibility of impairing defenses.[26] The "most serious" of these is the inability of Defense to prepare its case.[27] The anxiety and concern that we consider are not the normal anxiety and concern of all pretrial confinement.[28]

Appellant attempts to demonstrate prejudice through base access denial that inconvenienced his meeting with his defense counsel. However, he had two detailed counsel, one at Naval Station Mayport and the other at Naval Air Station Jacksonville (45 minutes apart). We note initially that when Appellant complained about not being afforded access to his counsel at Jacksonville, that complaint centered around inconvenience to his counsel, and not any actual hindrance to his preparation of a defense.[29] Further detracting from Appellant's prejudice claims, these inconveniences occurred while Appellant was *not* in pretrial confinement.

Appellant conceded at oral argument that he presented a mitigation case during sentencing that was unhindered by lack of communication with counsel. He asserts no lost witnesses, nor lack of access to evidence that curtailed in any way his presentation of evidence.[30]

Appellant also argues "oppressive" incarceration because command personnel did not visit him, and his recovery from outpatient, elective surgery (during pretrial confinement), was inconsistent with medical advice. While lack of command visitation would not ordinarily, in-and-of-itself, give rise to confinement being "oppressive," the record nonetheless reflects that his command chaplain did, indeed, visit him. Appellant's recovery from an outpatient medical procedure was not negatively affected by any duties assigned to him during his recovery. Appellant again conceded at oral argument that there was no evidence

---

[26] *Mizgala*, 61 M.J. at 129.

[27] *United States v. Guyton*, 82 M.J. 146, 155 (C.A.A.F. 2022) (citations and internal quotations omitted).

[28] *United States v. Reyes*, 80 M.J. 218, 229 (C.A.A.F. 2020).

[29] Appellate Ex. III at 228-29.

[30] Official Audio Recording of Appellate Oral Argument at 17:45.

that the brig's decision to return him to general population in a "light limited duty" status caused any complications in his recovery from surgery. These assertions are closer to normal anxiety and concern associated with pretrial confinement.[31]

Appellant argues that he need not show prejudice because the Court of Appeals for the Armed Forces (CAAF) has held that the mere "possibility" that an accused's defense would be impaired is enough to find prejudice. We find no support for Appellant's contention that actual prejudice is unnecessary to support a violation of Article 10, UCMJ. While the CAAF has indicated that protecting against the possibility of impairment to the defense is the most important goal of Article 10, UCMJ, the CAAF has always tested for prejudice.[32]

Finally, we disagree with the dissent that the military judge's decision not to grant Appellant 224 days of pretrial confinement credit somehow created prejudice under the circumstances of this case. As discussed more fully, *infra*, the military judge properly found that giving Appellant credit for the pretrial confinement credit twice would result in a windfall to Appellant.

This factor, therefore, weighs in favor of the Government.

Considering the length of the delay, the reason for the delay, the context and timing of the speedy trial demand, and the lack of prejudice,[33] we find no speedy trial violation, under Article 10, UCMJ.

## B. Pretrial Confinement and Article 66, UCMJ.

We review pretrial confinement credit de novo.[34] We defer to the military judge's findings of fact unless they are clearly erroneous.[35]

The *Department of Defense Sentence Computation Manual* requires military judges to "direct credit for each day [prisoners] spent in pretrial confinement . . . for crimes for which the prisoner was later convicted."[36] The Manual instructs: "[a] sentence to confinement adjudged by a court-martial shall not be served concurrently with any other sentence to confinement adjudged by a

---

[31] *Cossio*, 64 M.J. at 257-58.

[32] *See Cooley*, 75 M.J. at 262 ("This Court has never held that the mere fact of pretrial confinement constitutes prejudice.") (citations omitted).

[33] *Barker*, 407 U.S. at 530.

[34] *United States v. Smith*, 56 M.J. 290, 292 (C.A.A.F. 2002).

[35] *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005).

[36] Department of Defense Manual 1325.07 ¶C2.4.2.

court-martial or a civil court."[37] The Manual further addresses overlapping sentences:

> When a prisoner serving a sentence adjudged by a court-martial is later convicted of another offense and sentenced to another term of confinement, the later sentence to confinement shall be carried out as of the date adjudged and shall interrupt the running of the prior sentence. The remaining portion of the prior sentence to confinement shall be served after the later sentence has been fully served.[38]

In applying the *Sentencing Computation Manual* to this case, the Government urges us to follow our earlier, unpublished opinion in *United States v. Irvin*.[39] In *Irvin*, we found that "the *DoD Sentencing Computation Manual* does not envision an award of *duplicate credit* . . . based on the mere fact that the multiple offenses serving as grounds for the pretrial restraint resulted in convictions and sentences at multiple courts-martial [which] . . . would lead to an absurd result . . . ."[40]

We find no reason to depart from our reasoning in *Irvin*. Rather, we find that Appellant's position would lead to confusion and windfalls for pretrial confinees who are prosecuted and sentenced to consecutive periods of confinement who would then be entitled to multiple awards of credit for pretrial confinement periods.

We have also considered the argument, made by the dissent though not raised by Appellant, that Appellant was prejudiced because the Government chose to prosecute Appellant in successive courts-martial instead of bringing all charges at one court-martial which caused him to receive credit for his first 224 days of pretrial confinement at *Hemry I* and not at *Hemry II*. We disagree with the Defense that under the circumstances of this case that the military judge's denial of duplicate credit prejudiced Appellant.

As Appellant and the dissent acknowledge, Appellant did in fact receive credit for each day he was in pretrial confinement. He just did not receive that credit twice. For us to find that Appellant's loss of duplicate credit was prejudicial would have us assume that had Appellant in fact been charged at a single court-martial and been sentenced, either pursuant to a plea or after a finding

---

[37] *Id.* at ¶C2.7.1.

[38] *Id.* at ¶C2.7.2. (internal citation omitted).

[39] No. 201800319, 2021 CCA LEXIS 273 (N-M. Ct. Crim. App. Jun. 3, 2021) (unpublished).

[40] *Id.* at *18.

of guilty, (1) he would have been sentenced to concurrent sentences of confinement that (2) would not have exceeded the 60 months for which Appellant agreed the military judge could award in *Hemry II*.

We will not make such assumptions. The Government properly brought the charges for which it could no longer justify delay in *Hemry I*, and Appellant was credited with the days he served in pretrial confinement in that court-martial. He subsequently agreed to another plea agreement in *Hemry II*, and received the remainder of the pretrial confinement credit to which he was entitled. We therefore find that Appellant suffered no prejudice after receiving all confinement credit he was due.

After careful consideration of the record of trial, the briefs of appellate counsel, and oral argument, we have determined that the findings and sentence are correct in law and fact and no error materially prejudicial to Appellant's substantial rights occurred.[41]

The findings and sentence are **AFFIRMED**.

---

[41] Articles 59 & 66, UCMJ.

BURGTORF, Judge (concurring in part, and dissenting in part):

I agree with the majority that no Article 10 violation occurred, although I reach this conclusion through disagreement on the fourth *Barker* factor—the prejudice analysis. I also agree that a strict application of the *DoD Sentencing Manual*,[1] and this Court's prior decision in *Irvin*,[2] results in affirming the military judge's decision, awarding no additional pretrial confinement credit.

Should these issues present in isolation, I would agree with the majority. But the cause-and-effect relationship between them compels my dissent.

Edmond Dantes, in *The Count of Monte Cristo*,[3] used tally marks on the walls of his cave-like cell to mark the time of his unjust imprisonment. Appellant, in contrast, would have had to mark 224 zeros, before he got to his first tally, counting against his otherwise just, sentence. To this, I cannot give a judicial shoulder shrug.

The Government prejudiced Appellant through its delay and charging decisions, which caused the collateral consequence of an additional 224 days of confinement. I would, therefore, approve only so much of a sentence that excludes 224 days, under Article 66, UCMJ.

## A. Speedy Trial, under Article 10, UCMJ.

### 1. The first three Barker factors.

I agree with the majority on the first three *Barker* factors,[4] but the degree to which each factor weighs for the respective Parties causes the final factor, prejudice, to be dispositive.

The triggering length of time here was significant. Two hundred and forty-five days until arraignment, in a case where the Government possessed a confession on--day one--weighs in Appellant's favor.

The delay was reasonable, however, due to the nature of the case and necessary investigative steps. The forensic analysis, identifying and locating additional victims, and search warrants for multiple social media companies, ultimately results in this factor tipping for the Government.

---

[1] Department of Defense Manual 1325.07

[2] *United States v. Irvin*, No. 201800319, 2021 CCA LEXIS 273 (N-M. Ct. Crim. App. Jun. 3, 2021) (unpublished).

[3] Dumas, Alexandre, *The Count of Monte Cristo,* Duke Classics, 2012.

[4] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The complexity that helps the Government meet its burden,[5] however, cuts both ways. With Appellant's pretrial confinement, reasonable diligence should dictate greater resources than assigning a single agent, convalescing from surgery, to review forensic extraction evidence.

Combined with DC3 rejecting the initial electronic devices, the time needed to obtain a command authorized search and seizure, the time to send the first search warrants to social media, the Government was far from perfect. But, as the majority notes, and I agree, perfection is not the standard.[6] The Government met its burden, and cleared the second hurdle, but without much room to spare.

Likewise, Appellant's demand for a speedy trial only slightly tips in his favor. This is due to the length of time before the demand, and later actions consistent with an appellant planning to plead guilty for a lengthy period, knowing that he would receive credit toward his ultimate sentence.

Even prior to Appellant's speedy trial demand, the delay was problematic, and the Government recognized this. The expected time necessary for forensic analysis and extraction for all of Appellant's electronic devices caused the Government to make a good faith decision to charge Appellant with then-available evidence. The delay therefore caused the two courts-martial, and collateral prejudice.

*2. Prejudice.*

I agree with the majority that Appellant's assertions of prejudice--(1) inconvenience in communications with counsel, (2) lack of visitation from his command, and (3) remaining in pretrial confinement during convalescence from elective, outpatient surgery--do not create prejudice that moves the needle to any significant degree under the fourth *Barker* factor. Appellant's defense case was unhindered by the delay, and he experienced only the normal anxiety and concern associated with pretrial confinement, for the days he received credit.[7]

Preventing a ceremonial tally for 224 days caused significant, inescapable, prejudice, in my view. The Court of Appeals for the Armed Forces has stated that prejudice does not exist for confinement alone, as appellants receive day-for-day credit.[8]

---

[5] *United States v. Cossio*, 64 M.J. 254, 257-58 (C.A.A.F. 2007).

[6] *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005).

[7] *Cossio*, 64 M.J. at 257-58.

[8] *Id.* at 258.

Appellant received no such day-for-day credit. But for the Government's delay, and related charging decisions, this would not have come to pass.

The majority does not want to speculate on what the Parties considered, or negotiated. I do not know if the combination of charges in both courts-martial would have resulted in an agreement greater than the concurrent 48-60 months in his plea agreement. But it is irrefutable that Appellant negotiated for, and received, a concurrent sentencing in both *Hemry I* and here. I find this to be a common practice. Appellant also litigated this issue below. In light of these facts, I cannot let the absence of information benefit the Party responsible for its cause.

This would be an easy conclusion, had Appellant received appropriate credit, or if I viewed the issues in a vacuum. I would find no Article 10, UCMJ, violation, due to rectifying the prejudicial lack of day-for-day credit, in Appellant's second assignment of error.

**B. Pretrial Confinement Credit**

I agree that the *DoD Sentencing Manual* and this Court's decision in *Irvin*[9] result in no application of pretrial confinement, in separate courts-martial. This case, however, differs from *Irvin*.

*Irvin* involved investigations for unrelated offenses, committed at different times, and investigated on different timelines, due to marked differences in severity.[10] The Government put Irvin in pretrial confinement, on suspicion of murdering his wife.[11] After his release from pretrial confinement, a positive urinalysis triggered an investigation for drug abuse.[12] The drug abuse investigation predictably proceeded more expeditiously, at a special court-martial, than the murder investigation. A panel of this Court, understandably, concluded that it would be an "absurd result" to afford double credit for a subsequent, unrelated special court-martial.[13]

Here, in contrast, the two courts-martial were not caused by Appellant's unrelated and temporally remote misconduct. These two courts-martial were entirely due to the Government recognizing delay, and making a good faith decision to charge with then-available evidence. The Government should not then benefit from its own delay, and prevent Appellant from receiving pretrial

---

[9] *Irvin*, 2021 CCA LEXIS 273; Department of Defense Manual 1325.07.

[10] *Id* at *3.

[11] *Id.*

[12] *Id.*

[13] *Id.* at *18.

confinement credit that he otherwise would have received, had the Government proceeded more efficiently and charged all offenses at a single court-martial.[14]

I respectfully dissent from the majority's finding on pretrial confinement credit, and would grant relief under Article 66, UCMJ.

## C. **Article 66, UCMJ.**

The lack of day-for-day credit, for two separately negotiated, concurrent sentences, caused by the Government, should be remedied pursuant to this Court's authority under Article 66(d)(1)(A), UCMJ.[15] I would affirm "only . . . such part . . . of the sentence, as [I] find . . . correct in law and fact . . . should be approved."[16] I would affirm only so much of the sentence that excludes credit 224 days, to permit each of Appellant's tallies to count.

Accordingly, I respectfully dissent from the majority's decision on pretrial confinement and prejudice, and otherwise concur.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[14] Rule for Courts-Martial 601(e)(2), Discussion, Manual for Courts-Martial, United States (2019 ed.).

[15] *See United States v. Chin*, 75 M.J. 220, 222-23 (C.A.A.F. 2016) (discussing our plenary review under 10 U.S.C. 866(c) (2012), which includes the same language as the current statute).

[16] Article 66 (2022), UCMJ, has been modified since the Court of Appeals for the Armed Forces decision in *United States v. Chin*, the changes did not change the language upon which I rely.